Hester Siner Lancaster, *Widow, etc., v.* State
Compensation Commissioner *et al.*

(No. 9390)

Submitted October 20, 1942. Decided December 8, 1942.

Fox, PRESIDENT, dissenting.

*Mrs. Lucille C. Jeter*, for appellant.

RILEY, JUDGE:

Hester Siner Lancaster, widow of Robert Lancaster, deceased, appeals from an order of the Compensation Appeal Board, affirming an order of the Compensation Commissioner entered on April 16, 1942, refusing to reinstate her to the compensation rolls, from which she had been suspended by order of the Commissioner entered on February 13, 1936, and also refusing payment of past-due installments of compensation.

Decedent was fatally injured on June 25, 1914, while working for the Solvay Collieries Company, predecessor of Kingston-Pocahontas Coal Company. Under the Compensation Act, as originally enacted (Acts, West Virginia Legislature, Regular Session, 1913, Chapter 10, Section 33 [4]), claimant and her children were awarded compensation on the then statutory basis of twenty dollars per month to the widow and five dollars monthly for each child. The order making the award was destroyed in the fire which burned the capitol building in 1921 and no copy thereof is contained in this record.

Claimant received her compensation checks regularly each month until June, 1919, when, in search of work, she placed her two children in her mother's care and left the home where she had been staying with her father and mother. The Commissioner was not advised as to her change of address, and, consequently, two checks were mailed to her original address. Claimant's mother, not knowing her daughter's whereabouts, returned the checks to the Commissioner. Claimant did not return to her parents' home until 1935. She then learned for the first time that the compensation checks, with the exception of the two which were returned, had not been received and

the proceeds applied to the support of her family, and promptly wrote the Commissioner asking for the payment of the past-due installments.

After an investigation the Commissioner, without any hearing, entered an order on February 13, 1936, stopping payment of compensation to claimant as of June, 1919, the date of the last payment, on the ground that she had been illicitly living with a man or men 'as a wife and had lived a life of prostitution. The statute (Acts, West Virginia Legislature, Regular Session, 1935, Chapter 78, Section 10 [d]), under which the Commissioner acted in stopping compensation, was in force when the order of April 16, 1942, complained of here, was entered (Code, 23-4-10 [d]). It was not until the enactment of Acts, West Virginia Legislature, 1915, Chapter 9, Section 33 (c), that the provision for the forfeiture of compensation on the basis of misconduct of a widow or widower, relied upon by the Commissioner and the Appeal Board, was incorporated in the Workmen's Compensation Act.

Thus the question which initially and fairly arises is whether the claimant's right to payments under the award is governed by the statute in force at the date of the fatal injury, June 25, 1914, or at the time of the alleged misconduct.

Because the relation between the employer and employee, under the Workmen's Compensation Act, is voluntary, it is contractual and the statute becomes an integral part of the contract. *Gooding* v. *Ott, State Compensation Commissioner,* 77 W. Va. 487, Pt. 2, Syl., 87 S. E. 862, L. R. A. 1916D 637; *Hardin* v. *Workmen's Compensation Appeal Board,* 118 W. Va. 198, 200, 189 S. E. 670. Upon this theory courts generally postulate the rule that as regards an injured employee the time of injury is determinative of whether the earlier or later provisions of the Workmen's Compensation Act apply. For a collation of authorities see A. L. R. note to *Cote, Adm'x., etc.* v. *Bachelder-Worcester Company,* 85 N. H. 444, 160 A. 101, 82 A. L. R. 1239, note pages 1244-5. And the rule likewise is applicable to dependents of an employee killed in the course of and as a result of his employment. See above-

mentioned note, pages 1245-1249, inclusive, citing *Stanswsky* v. *Industrial Commissioner,* 344 Ill. 436, 176 N. E. 898; *Playhouse Theatre* v. *Industrial Commission,* 346 Ill. 509, 179 N. E. 89; *Riggs* v. *Lehigh Portland Cement Co.,* 76 Ind. App. 308, 131 N. E. 231; *Thorpe* v. *Department of Labor & Industries,* 145 Wash. 498, 261 P. 85, and other cases. In *Riggs* v. *Cement Co., supra,* the Supreme Court of Indiana, held applicable to claim of dependents a statute in force at the time of the injury, which provided that the marriage of the mother should terminate the dependency of a surviving dependent child. In holding inapplicable an amendment of the statute providing that, on the marriage of the widow, her dependency would terminate, but not the dependency of the child, the court said:

> "To permit subsequent legislation to increase or diminish the compensation specified in awards would be to strike down vested rights. Then no one would be secure. The resulting uncertainty, distrust, and confusion would destroy the compensation plan itself. To give to the amendment the effect desired by appellant would be to confer on the child a substantive right which she did not possess at the time of the injury and death of her father, and to impose on the employer a burden not imposed by the law at that time, and would be giving an unwarranted retroactive effect to the amendment."

The rule likewise prevails in this jurisdiction. In *Hardin* v. *Workmen's Compensation Appeal Board, supra,* Pt. 1, Syl. this Court held:

> "In case of an injury resulting in the death of an employee, the statute governing compensation to the dependents of the deceased, in effect at the date of the original injury, controls the award, and not the statute in force at the date of the death of the employee."

See also *Jenkins* v. *Heaberlin,* 107 W. Va. 287, Pt. 1, Syl., 148 S. E. 117, explained in *Carbon Fuel Co.* v. *State Compensation Commissioner,* 111 W. Va. 639, 640, 163 S. E. 62; *Cherry* v. *State Compensation Commissioner,* 115 W. Va.

180, 174 S. E. 889. We think these authorities represent sound law, and that claimant is entitled to payment of compensation on the basis of twenty dollars per month from the time she received her last payment in June, 1919, and future payments on the same basis.

In the consideration of this case we have noted that the Commissioner entered ·the order of February 13, 1936, stopping claimant's compensation as of June, 1919, without according her a hearing. True, the order was entered after an investigation, but the statute under which the compensation was stopped (Acts, West Virginia Legislature, Regular Session, 1935, Chapter 78, Section 10 [d]), provides for both investigation and hearing "as provided by article five of this chapter". Claimant did not demand a · hearing, but she was under no obligation to do so. · Article V, Section 1, of the statute provides, in part, "* * * upon the making or refusing to make any modification or change with respect to former findings or orders, the commissioner shall give notice in writing to the * * * dependent * * * of his action, which action shall state the time allowed for an appeal to the board, and such action shall be final unless the * * * dependent * * * shall, within thirty days after receipt of such notice, object in writing to such finding. Upon receipt of such objection * * * the commissioner shall, within thirty days from the receipt of any objection to his action or finding as aforesaid, set a time and place for the hearing of evidence." Notwithstanding the foregoing provision of the statute, the Commissioner upon the entry of the order stopping compensation failed to notify claimant in writing of his action and the time for an appeal to the Compensation Appeal Board. We think, therefore, that the order of February 13, 1936, never became final, and does not bar the instant claim. On January 11, 1936, the Commissioner notified claimant, in writing, of the result of his investigation and advised claimant that, "* * * in the absence of a protest and showing by you to the contrary within thirty days from this date, a formal order will be entered, stopping all payments of compensation to you, effective as of the date of the last payment

thereof." This letter does not satisfy the provisions of the statute, and, moreover, the statute does not require an aggrieved claimant to produce proof within thirty days from the time she was notified of the Commissioner's intention to enter an adverse order. The question of the finality of the Commissioner's order of February 13, 1936, was raised by claimant's counsel. We have noted the impropriety of the procedure entertained by the Commissioner relating to this order. However, the initial question in this case is jurisdictional and was decided in claimant's favor, and therefore the Commissioner was without authority to enter the order of February 13, 1936, and that order cannot serve as a bar to the instant claim.

In addition to the claim for the principal of the past-due payments, claimant says that she is entitled to interest on each monthly payment which accrued since the time she made her demand on the Commissioner. No authority is cited in support of this proposition. From our own investigation we find that the weight of authority seems to support the allowance of interest on past-due payments of compensation. *Johnson* v. *Ismert-Hincke Milling Co.*, 116 Kan. 731, 229 P. 359; *Pointe Coupee Electric M. Corporation* v. *Pettey*, La. App., 6 So. 2d 764; *Garcia et ux.* v. *Salmen Brick & Lumber Co.*, 151 La. 784, 92 So. 335; *Nester* v. *H. Korn Baking Co.*, 194 Iowa 1270, 190 N. W. 949; *Employers' Indemnity Corporation* v. *Felter*, (Tex. Civ. App.) 264 S. W. 137. However, this Court is not bound by these decisions. The West Virginia Workmen's Compensation Act contains no provision as to the payment of interest. We think that in the absence of such provision, the claim for interest should not be allowed. In this we are supported by respectable authority. *Spier* v. *Department of Labor and Industries*, 176 Wash. 374, 29 P. 2d 679; *Horton* v. *Department of Labor and Industries*, 199 Wash. 212, 90 P. 2d 1009.

The orders of the Appeal Board and Commissioner are reversed, and the case remanded for further proceedings in accordance with the principles herein set forth.

*Reversed and remanded.*

Fox, PRESIDENT, dissenting:

I am unable to concur in the majority opinion, which is based on the theory that the statute as it existed at the date of the death of Robert Lancaster, claimant's deceased husband, must be applied to the present situation, and that subsequent statutes, which provide that in certain circumstances compensation may be stopped, are inapplicable. I agree that in all matters affecting the original right to compensation, the allowance and the amount thereof, the statute in effect as of the date of the death of Robert Lancaster must control. The majority opinion contains citations of authority on this point, the relevancy and soundness of which I do not question.

The original compensation statute was enacted in 1913, Chapter 10, Acts of the Legislature, Reg. Sess., 1913, Subsection 4 of Section 33 of that act provides that, "If the deceased employee leave a widow or invalid widower the payment shall be twenty dollars per month until the death or remarriage of such widow or widower", and contains no provision under which compensation could be legally stopped except remarriage. The Legislature amended the act at its Regular Session of 1915, Chapter 9, Section 33, Subsection (c), which provides that, "if upon investigation it shall be ascertained that said widow or widower is living with a man or woman, as the case may be, as man and wife and not married, or the widow living a life of prostitution, the commissioner shall stop the payment of the benefits herein provided to said widow or widower". A further amendment to this section was enacted by the Legislature at its Regular Session of 1935, and by Chapter 78, Section 10, Subsection (d) of the statute is made to read as follows: "If upon investigation and hearing, as provided in article five of this chapter, it shall be ascertained that said widow or widower is living with a man or woman, as the case may be, as man and wife and not married, or the widow living a life of prostitution, the commissioner may stop the payment of the benefits herein provided to such widow or widower". The crucial point raised on this record is whether

the provisions of the Acts of 1915 and 1935 are applicable to the case before us.

I am of the opinion that, under the police power of the State, the Legislature had the right to enact the statutes in question, and that they should be applied to the claimant's case. The theory of the majority opinion seems to be that some character of contract existed between the employer and decedent, the benefit of which survived to decedent's widow and dependents, which could not be impaired by subsequent legislation. In my opinion, the Legislature had the right, as a regulation of public morals, to provide that compensation should not be paid to a widow who engaged in the practices mentioned in the two statutes last above quoted.

That the regulation of morals comes clearly within the police power of the State cannot be doubted. *Ex Parte Hudgins*, 86 W. Va. 526-531, 103 S. E. 327, 9 A. L. R. 1361. In 11 Am. Jur. 272, it is stated:

"A cardinal principle involved in the exercise of the police power establishes the well-settled rule that the police power may be exerted to preserve and protect the public morals. Therefore, any practice or business the tendency of which, as shown by experience, is to weaken or corrupt the morals of those who follow it or to encourage idleness instead of habits of industry is a legitimate subject for regulation or prohibition by the state. * * * Activities of such a nature as to engender vice, indecency, and social corruption are within the police power to regulate."

It may be contended that power to regulate public morals may not extend to the regulation of individual morals, but I think that any legislation calculated to suppress immorality and indecency may be enacted by the legislature, which is the repository of the police power of the State, even though it may be enforced against a single individual.

If the Legislature had the right, under the police power, to enact the legislation in question, it was not restricted,

in the exercise of that power, by the fact that the effect thereof may have been to impair, to some extent, the obligation of existing contracts. Attached to every contract is the implied reservation that, for the good of the State, its terms may be modified, or even abrogated. This has been held by this Court. *City of Benwood v. Public Service Commission,* 75 W. Va. 127, 83 S. E. 295, L. R. A. 1915C, 261; *Mill Creek Coal & Coke Co. v. Public Service Commission,* 84 W. Va. 662, 100 S. E. 557, 7 A. L. R. 108. These are cases affecting rates charged by public service corporations, but they are based upon the principle that a contract may, under the police power, be disregarded for the public good. Applying this principle, I see no reason why any contract arising out of a statute may not likewise be affected or impaired by a subsequent statute, where the police power of the State is involved. In Cooley's Constitutional Limitations, Vol. Two, (8th Ed.) page 1237, referring to the police power of the state, it is stated that:

"The occasions to consider this subject in its bearings upon the clause of the Constitution of the United States which forbids the States passing any laws impairing the obligation of contracts have been frequent and varied; and it has been held without dissent that this clause does not so far remove from State control the rights and properties which depend for their existence or enforcement upon contracts, as to relieve them from the operation of such general regulations for the good government of the State and the protection of the rights of individuals as may be deemed important. All contracts and all rights, it is declared, are subject to this power; and not only may regulations which affect them be established by the State, but all such regulations must be subject to change from time to time, as the general well-being of the community may require, or as the circumstances may change, or as experience may demonstrate the necessity."

Therefore, it is my opinion that the Legislature had the right to enact the limitation placed upon the payment of compensation to a widow, as set out in the Act of 1915

and the subsequent amendment thereto, and to enforce the same, as to all situations arising after the effective date of such legislation.

The claimant was paid compensation until June, 1919. She then abandoned her children, left the State, and did not return for sixteen years, during all of which time, she was out of contact with her children, and, it is alleged, engaged in practices for which under the 1915 statute, the Compensation Commissioner was authorized to stop payments of compensation to her. When she left the State in 1919, payment of compensation stopped, and nothing was paid to her thereafter at any time. When she returned in 1935, she made prompt application for the payment of accrued compensation. At that time an investigation was made, and upon its completion, she was notified, by registered letter, received by her on January 13, 1936, of the result thereof, and advised that "in the absence of a protest and showing by you to the contrary within thirty days from this date, a formal order will be entered, stopping all payment of compensation to you, effective as of the date of the last payment thereof". No protest against the findings resulting from the investigation was made by claimant at that or any other time, and no hearing was demanded. On February 13, 1936, the Commissioner entered an order which, after reciting the grounds for his action, reads as follows: "It is therefore ordered that payments of compensation to said Hester Lancaster, as the dependent widow of the deceased be, and the same hereby are stopped and her award of compensation annulled, effective as of June, 1919, * * *." This order does more than stop payment of compensation. It annulled the award of compensation to her. There was no appeal from this order, and I am unable to see why it should not be treated as *res adjudicata* of the claim now made. It is true that when this order was entered there was no notice to claimant of the time within which she could apply to the Appeal Board for an appeal therefrom; but I do not think this omission should, in the circumstances of this case, be permitted to destroy the force and effect of the order so entered, the claimant having notice that her

claim had been rejected, and making no protest. She, in effect, thereby abandoned her claim, and should not now be permitted to re-assert it. The provisions of the statute with respect to notice of the right to appeal were, in my opinion, intended to apply to cases where a claimant was pressing her claim, either before the Commissioner or the Appeal Board, and do not apply to the situation here presented.

The order of February 13, 1936, was entered subsequent to the enactment and effective date of Chapter 78, Acts of the Legislature, Reg. Sess., 1935, and that act requires both investigation and hearing. The investigation was made, and claimant given an opportunity to protest. She made no protest, made no demand for a hearing, and she should not now be heard to complain that a hearing was not had. It may be contended that the stopping of compensation could only have been made effective subsequent to the date of the investigation and hearing, and that it was an improper exercise of the Compensation Commissioner's power to make the stoppage of payments effective at an earlier date. Technically speaking, this contention, if it had been made at that time, would have merited serious consideration, but it was not made. The order of the Commissioner was allowed to go unchallenged, and, in my opinion, the point cannot now be raised. From the standpoint of giving the statute a reasonable application, it would seem to be a perversion of the intent and purpose of the Legislature to pay compensation to a widow who had engaged in practices which it was the clear intent of the Legislature to suppress, even in the unusual circumstances of this case. Contrary to the general rule, and for obvious reasons, the claimant is not entitled to the benefit of a liberal and favorable construction of the statutes involved. Ordinarily, the stoppage of compensation has no other than a prospective operation, but this case is unusual in that for a long period of time, during which the Commissioner would have been warranted at any time in stopping her compensation, she did not receive the same and later makes claim therefor.

I would affirm the action of the Compensation Commissioner and the Appeal Board on the grounds, first, that the statutes which have existed in substantially the same form since 1915, respecting the power of the commissioner to stop compensation to a widow, are applicable to the claimant's case; and, second, that her right to compensation and the continuance of the award to her have been settled by the order of the Commissioner of February 13, 1936, which remains unreversed, and is, therefore, *res adjudicata* as to her claim.