Raymond **BELCHER**, Plaintiff,

v.

Elliot L. **RICHARDSON**, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 1185.

United States District Court, S. D. West Virginia, at Bluefield.

Sept. 10, 1970.

Marshall G. West, West, Blackshear & Rundle, Pineville, W. Va., for plaintiff.

W. Warren Upton, U. S. Atty., Charleston, W. Va., Leo J. Meisel, Asst. U. S. Atty., Huntington, W. Va., for defendant.

CHRISTIE, District Judge.

This is an action under Section 205 (g) of the Social Security Act, 42 U.S. C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare. A decision by a hearing examiner on October 31, 1969, became the final decision of the Secretary on January 20, 1970, when it was affirmed by the Appeals Council. The matter is before the Court on the cross motions of the parties for summary judgment pursuant to Rule 56.

The plaintiff filed an application for disability insurance benefits on May 20, 1968, alleging that he became unable to work on March 25, 1968, as the result of an injury. On May 20, 1968, his wife and children also applied for benefits under the Act. The Secretary having determined that plaintiff was disabled within the meaning of the Act, all applicants were awarded benefits on September 30, 1968, such benefits to begin with the month of October 1968.

Later, plaintiff received an award of $203.60 per month from the Workmen's Compensation Fund of West Virginia as the result of a work-related injury. Upon learning of this award, the Social Security Administration applied the "offset" provisions of Section 224 of the Social Security Act, 42 U.S.C.A. § 424a.[1]

1. Section 224 of the Social Security Act, 42 U.S.C.A. Section 424a, as amended, July 30, 1965 and January 2, 1968, provides:

"(a) If for any month prior to the month in which an individual attains the age of 62—

"(1) such individual is entitled to benefits under section [223] of this title, and

"(2) such individual is entitled for such month, under a workmen's compensation law or plan of the United States or a State, to periodic benefits for a total or partial disability (whether or not permanent), and the Secretary has, in a prior month, received notice of such entitlement for such month,

the total of his benefits under section [223] of this title for such month and of any benefits under section [202] of this title for such month based on his wages and self-employment income will be reduced (but not below zero) by the amount by which the sum of—

"(3) such total of benefits under sections [223] and [202] of this title for such month, and

"(4) such periodic benefits payable (and actually paid) for such month to such individual under the workmen's compensation law or plan,

exceeds the higher of—

"(5) 80 percentum of his 'average earnings', or

"(6) the total of such individual's disability insurance benefits under section [223] of this title for such month and of any monthly insurance benefits under section [202] of this title for such month based on his wages and self-employment income, prior to reduction under this section.

"In no case shall the reduction in the total of such benefits under sections [223] and [202] of this title for a

On February 10, 1969, plaintiff's attorney requested a reconsideration of the offset reductions which the Administration rejected on July 19, 1969. Thereupon, said attorney requested a hearing, held October 9, 1969, at which he presented argument supporting his claim that Section 224 deprived plaintiff and his family of a property right without due process of law and that it was discriminatory inasmuch as it discriminated unfairly between persons of a similar class. On October 31, 1969, the hearing examiner issued his opinion upholding the legality of the reduction of benefits. This decision became the final decision of the Secretary on January 20, 1970, when it was affirmed by the Appeals Council. Thereupon, plaintiff timely filed the instant action in this court. ˙

**I**

As previously noted (footnote 1), Section 224 provides for a reduction in social security disability benefits for such time as the claimant receives workmen's compensation benefits for either total or partial disability. Workmen's compensation laws generally provide compensation to employees for loss resulting from industrial accidents and disease growing out of or resulting from their employment. The need for such a system arose out of conditions produced by modern industrial development and was premised upon the idea that the common-law rule of liability for personal injuries incident to the operation of industrial enterprises, which was based upon the negligence of the employer, with its defenses of contributory negligence, fellow servant's negligence, and assumption of risk, was outmoded by modern conditions.

West Virginia's Workmen's Compensation Law is found in Chapter 23 of the West Virginia Code. The law creates a "Workmen's Compensation Fund" which is sustained by contributions made to it by the employers who voluntarily elect to come under the provisions of the law, such contributions being based upon a percentage of the gross wages of their employees. The employees make no direct monetary contributions to the fund and the system is state-operated. Basically, the law takes from the employee his common-law right to sue his employer for damages for negligence in return for payment from the fund of limited or scheduled benefits for disability or death resulting from or growing out of the employment relationship, regardless of any fault of the employer.

In West Virginia the relation of employer and employee, under the law, is termed contractual in nature, the statute becoming an integral part of the contract of employment, and imposing upon the employer and employee, respectively, a limitation of rights and liabilities. Gooding v. Ott, 77 W.Va. 487, 87 S.E. 862; Lancaster v. State Compensation Comr., 125 W.Va. 190, 23 S.E.2d 601. Thus, in no sense of the word can one's workmen's compensation benefits be termed a gratuity; rather they must be treated as a contractual entitlement. So it is seen that the issue before this Court as to this aspect of the case is whether or not Section 224 of the Social Security Act, requiring reduction in plaintiff's social security benefits in proportion to the amount of his workmen's compensation benefits, may be constitutionally applied.

month (in a continuous period of months) reduce such total below the sum of—

"(7) the total of the benefits under sections [223] and [202], of this title, after reduction under this section, with respect to all persons entitled to benefits on the basis of such individual's wages and self-employment income for such month which were determined for such individual and such persons for the first month for which reduction under this section was made (or which would have been so determined if all of them had been so entitled in such first month), and

"(8) any increase in such benefits with respect to such individual and such persons, before reduction under this section, which is made effective for months after the first month for which reduction under this section is made."

## II

■ It cannot be seriously contended that the Social Security Act itself is unconstitutional for its constitutionality has been upheld in a long line of cases. Helvering v. Davis, 301 U.S. 619, 57 S. Ct. 904, 81 L.Ed. 1307 (1937). See also Steward Machine Company v. Davis, 301 U.S. 584, 57 S.Ct. 883, 81 L.Ed. 1279 (1937), and Carmichael v. Southern Coal and Coke Company, 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 (1937). It is equally well settled that entitlement to social security benefits is subject to all conditions set out in the Social Security Act under which benefits are to be paid. Flemming v. Nestor, 363 U.S. 603, 80 S. Ct. 1367, 4 L.Ed.2d 1435 (1960); Gruenwald v. Gardner, 390 F.2d 591 (2d Cir. 1968), cert. den. Gruenwald v. Cohen, 393 U.S. 982, 89 S.Ct. 456, 21 L.Ed.2d 445 (1968); Price v. Folsom, 168 F.Supp. 392 (D.Ct.N.J.1958), affirmed Price v. Flemming, 280 F.2d 956 (3d Cir. 1960), cert. den. 365 U.S. 817, 81 S.Ct. 698, 5 L.Ed.2d 695 (1961).

Notwithstanding, as previously noted, plaintiff urges that the offset provision of Section 224 deprives him of his property (benefits) without due process of law. The answer would seem to hinge upon whether the plaintiff has such an indefeasible right or interest in his social security benefits that the concept of due process precludes application of the offset statute.

In Flemming v. Nestor, supra, the Court found that the old-age benefits of an alien, deported for cause under the Immigration and Nationality Act, could be lawfully terminated without offending the Due Process Clause of the Fifth Amendment. There the Court rationalized that the noncontractural interest of an employee covered by the Social Security Act cannot be analogized to that of the holder of an annuity, where the right to benefits is based on a contractual duty to pay premiums, and further, that to hold otherwise would render the law too inflexible to permit necessary adjustment to ever-changing conditions. Justices Black, Douglas and Brennan dissented, each filing a separate dissenting opinion and each strongly arguing that the alien had a property right in his old-age benefits and to deprive him of them was a violation of due process.

We have been referred to several unreported decisions of district courts and one reported decision, Bartley v. Finch, 311 F.Supp. 876 (E.D.Ky.1970), in support of the defendant's position that Section 224 may be constitutionally applied, and it would indeed be easy for us to follow that path. However, we are not convinced that the issue raised in this case deserves such cavalier treatment, especially in view of the more recent decision of the Supreme Court in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), which tends to elevate entitlement to welfare to the status of a property right and to surround it with all the safeguards required by due process. Such benefits, the Court states (p. 262, 90 S.Ct. p. 1017), are a matter of "statutory entitlement for persons qualified to receive them," and as support for this conclusion the Court, in footnote 8 of the same page, refers to an article in the Yale Law Review stating that,

> "It may be realistic today to regard welfare entitlements as more like 'property' than a 'gratuity.'"

Therefore, since the Court in *Goldberg* appears to have determined that entitlement to welfare is in the nature of a property right, protected by the Due Process Clause of the Fifth Amendment, by the same rationale it must be determined that one who has made direct contribution to the social security fund and becomes entitled to disability benefits thereunder should and ought to be accorded equal status and protection. For it seems to us to be patently unfair for the welfare recipient, under *Goldberg,* to have a "property right status" with all the procedural safeguards of due process, while the social security recipient, under *Nestor,* is deprived of such status and protection. The distinction is not only completely illogical, but is grossly inequitable. Indeed, it appears to run

counter to the intent of Congress as reflected by the comments by Senator George, Chairman of the Senate Finance Committee, at the time of the passage of the Social Security Act concerning its purpose and character, as quoted in the *Nestor* dissent, 363 U.S. p. 623, 80 S.Ct. p. 1379:

> "'It comports better than any substitute we have discovered with the American concept that free men want to *earn* their security and not ask for doles—that what is due as a matter of *earned right* is far better than a gratuity. * * * (Emphasis added)
>
> * * * * * *
>
> "'Social Security is not a handout; it is not charity; it is not relief.* It is an *earned right* based upon the contributions and earnings of the individual. As an *earned right,* the individual is eligible to receive his benefit in dignity and self-respect.'" (Emphasis added) 102 Cong.Rec. 15110.

■ Thus, we must conclude that the concept espoused by the majority in *Nestor,* that one who has contributed to the social security fund and later becomes eligible to receive the benefits provided by the Social Security Act has no indefeasible property right to such benefits, is no longer to be considered a viable and controlling precedent for that principle, in view of the more recent holding in *Goldberg* that a welfare recipient who has made no direct contribution to the fund from which he draws benefits does have a recognizable property right to such benefits and one which is protected by all the safeguards of due process.

### III

The other issue raised by the plaintiff is that the offset provision of Section 224 creates arbitrary discrimination between two classes of disabled workers, essentially indistinguishable from each other except that one is composed of those disabled persons who also receive workmen's compensation benefits and the other is composed of those disabled persons who also receive benefits from private disability insurance plans or tort claim awards, and that on the basis of this difference alone the first class has benefits reduced while the second class has benefits left untouched. In other words, the plaintiff complains that it is patently arbitrary to single out for the purpose of applying the offset *only* those who are receiving workmen's compensation and exclude those who are receiving benefits from other sources. The plaintiff further argues that the offset provision also discriminates between those who were disabled prior to June 1, 1965 and those who become disabled after June 1, 1965.

■ The defendant, in justification of these discriminatory features of the offset provision, argues that its purpose was to avoid duplication of *public* benefits. If this be its true purpose, it is certainly a laudable one and one which this Court could wholeheartedly accept. However, the argument is inapplicable here for, as previously shown, workmen's compensation in West Virginia is not a gift from the public largesse, but rather is an entitlement arising from a contractual relationship between employer and employee, sanctioned by law, whereby each gave up a legal right in return for a concomitant legal benefit. That no public funds are involved is made abundantly clear by the provisions of West Virginia Code, 23–3–1. There, it is provided that the Workmen's Compensation Fund shall be supported by "premiums and other funds paid thereto by employers," from which shall be paid all benefits due the employees or their dependents and the expenses of administering the law. No public funds being thus involved, the defendant's argument that plaintiff's workmen's compensation award should be treated as a public benefit obviously becomes quite untenable and must be rejected.

■ In sum, therefore, it is held that in the circumstances of plaintiff's case,

the application of Section 224 cannot be constitutionally applied, since to do so would deprive him of due process and equal protection of the law under the Fifth and Fourteenth Amendments. The motion of the plaintiff for summary judgment will acordingly be granted and the motion of the defendant for summary judgment will be denied.