268 S.E.2d 886 (1980)
MOUNTAINEER CONTRACTORS, INC.
v.
MOUNTAIN STATE MACK, INC.
No. 14067.
Supreme Court of Appeals of West Virginia.
July 10, 1980.
*888 George S. Sharp, Kay, Casto & Chaney, Charleston, for appellant.
Clark B. Frame, Morgantown, Stephen P. Swisher, Dunbar, for appellee.
*887 McGRAW, Justice.
Mountain State Mack, Inc., appeals from a ruling of the Circuit Court of Kanawha County, which denied a motion to set aside the jury verdict in a breach of warranty action brought by appellee, Mountaineer Contractors, Inc. Appellant claims that the trial court erred in submitting the case to the jury on the issues of the express and implied warranties allegedly arising from the sale of mining and construction equipment to appellee and in instructing the jury as to the measure of damages. We do not agree and affirm the ruling of the lower court.
Appellee, a corporation located in Morgantown, owns and operates heavy earth-moving equipment in surface mining and comparable industrial projects. Appellant sells such equipment as a part of its business. In July of 1974, appellant's representative and salesman, William Young, contacted Glenn D. Liston, president of Mountaineer Contractors, Inc., and advised him of the availability for sale of four (4) used Caterpillar D-9 bulldozers, which appellee needed for use in its surface mining operations. Pursuant to arrangements made by appellant, Mr. Liston flew to Tennessee with Mr. Young and another of appellant's representatives to inspect the equipment.
The bulldozers, then owned by Harold Mitchell, aka Jack Reynolds, were being used in a strip-mining operating in Tennessee at that time. Mr. Liston, representing appellee, and appellant's representatives observed the machines in operation there. Afterwards, the three men proceeded to a repair shop where appellant's representatives examined the service records on the four bulldozers. Mr. Liston did not inspect these records.
On the return flight to Morgantown, Mr. Young and Mr. Liston discussed terms for the purchase of the machinery by appellee and apparently struck a bargain. According to appellee, Mr. Young assured Mr. Liston that appellee would be permitted to use the equipment for an eight-hour shift, during which time appellee could have its mechanic inspect the equipment for needed repairs, the cost of which would be born by appellant. Appellant was to be responsible for shipping the machinery from Tennessee to Morgantown. Appellee also agreed to purchase a Caterpillar 988 Loader from appellant.
Mr. Liston testified that as each piece of machinery was delivered to Morgantown, in some cases after substantial delay, various defects were discovered. Several of the machines could not be driven from the trailer *889 on which they were shipped and appellee was required to use its employees and other equipment to unload them.
Mr. Liston testified that upon discovering the defects, he immediately telephoned Mr. Young and informed him that appellee would not accept the equipment in its damaged condition. According to Mr. Liston, Mr. Young assured him that appellant would pay for all necessary repairs. In reliance on these representations, appellee agreed to accept the bulldozers and kept records of all repairs made, but was never reimbursed by appellant. Appellee has continued to pay the installments on the equipment as required by the agreement.
At one point, Mr. Young and appellant's bookkeeper went to Morgantown to discuss a settlement. Appellee's office manager testified that at that time appellant's representatives were given copies of all invoices and a breakdown of all repair work done on the machines since their delivery. Mr. Young and the bookkeeper were later fired by appellant and settlement negotiations ended. Mr. Young was subpoenaed as a witness by appellee but failed to appear at trial. He and Mr. Liston were the principal witnesses to the contract terms and negotiations.
Appellee commenced this action in December of 1975 in the Circuit Court of Kanawha County to recover damages upon the theory that appellant had breached certain warranties, express and implied, flowing from the sale of the equipment. At the conclusion of appellee's case, and at the end of all evidence, appellant moved for a directed verdict, which motions were denied by the trial court. The jury rendered a verdict for appellee in the amount of $28,501.00. Appellant's motion to have the verdict set aside was denied and appellant petitioned this Court for review.
Appellant's major contention is that the trial court erred in submitting to the jury the issues of the implied warranties of merchantability and the express warranties to repair which were the basis of appellee's action below. Appellant asserts that the warranties it was claimed to have breached were excluded by law under certain provisions of the Uniform Commercial Code and that therefore the issue of the existence of the warranties was a question of law for the trial court. Appellant also contends that the trial court erred in instructing the jury as to the measure of damages. We will first resolve the issues of the warranties with respect to the sale of the four bulldozers and treat as a separate matter the sale of the end loader.

I
One of appellee's theories of the case at trial was that the sale of the bulldozers gave rise to implied warranties of merchantability which appellant breached by delivering to appellee defective equipment unfit for use in appellee's strip mining operations. Under the Uniform Commercial Code, adopted by the legislature in 1963 and embodied in Chapter 46 of the West Virginia Code, a warranty of merchantability is implied in any contract for the sale of goods where the seller is a merchant with respect to goods of that kind and assures the buyer that, among other things, the goods are fit for the ordinary purposes for which they are used.[1] The implied warranty of merchantability arises by operation of law, irrespective of the intention of the seller to create it.
The implied warranty of merchantability is not absolute, however. The Uniform Commercial Code anticipates that the parties, by agreement or by deed, may limit or exclude entirely the warranty of merchantability otherwise implied in a contract for the sale of goods. W.Va. Code § 46-2-316. Appellant's contention that it was entitled to judgment as a matter of law on the issue of the implied warranties springs from its position that such an exclusion was effected with respect to the four bulldozers.
Appellant contends that the implied warranties arising from the sale of the bulldozers were waived by the actions of appellee *890 in relation to W.Va. Code § 46-2-316(3)(b), which provides:
Notwithstanding subsection (2) . . when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him.
Appellant asserts that when appellee, by its representative, observed the bulldozers in Tennessee before the sale and declined to inspect their service records, the warranties of merchantability flowing from those transactions were excluded by operation of law and appellant was entitled to judgment as a matter of law. In view of the facts of this case we must disagree.
It was uncontroverted at trial that Mr. Liston, as appellee's representative, did in fact observe the bulldozers in operation on the job site in Tennessee before agreeing to buy them. While testimony was in conflict as to the duration and extent of that examination and as to what sort of inspection would be necessary to reveal to a buyer, such as appellee, the defects complained of here, both Mr. Liston and appellant's witness Mitchell/Reynolds indicated that the bulldozers were in good working order at the time of the examination. Mitchell/Reynolds also testified that the machines were working when they were loaded for shipment to appellee. Yet appellee's representative testified without contradiction that when the equipment arrived in Morgantown, some of the bulldozers could not be started and driven from the shipping platform because of damage to the pony motor, final drive, torque converter, or transmission pump. Moreover, Mr. Liston testified, and appellant admitted, that in disassembling the bulldozers for transport through West Virginia, the bolts holding the blades, trunnion balls and ripper attachment were cut off with a torch, instead of being unscrewed. Finally, appellee introduced uncontradicted evidence that one of the bulldozer blades which was delivered was not the same blade attached to the machine at the time Mr. Liston saw it.
It is an obvious corollary of § 46-2-316(3)(b) that warranties of merchantability are not excluded with respect to defects which the examination would not reasonably disclose. See, Nettles v. Imperial Distributors, Inc., 152 W.Va. 9, 159 S.E.2d 206 (1968). A determination of whether alleged defects giving rise to an action for breach of warranty should have been discovered by the buyer upon examination of the goods is generally a question of fact for the jury. Where there is evidence in a breach of warranty action which could support the inference that the defects giving rise to the alleged breach did not arise until after the buyer's examination of the goods, the issue of whether the buyer's examination constituted a waiver of the implied warranty of merchantability under W.Va. Code § 46-2-316(3)(b) is a proper question for jury determination. The evidence adduced at trial was sufficient to support a finding that the defects complained of by appellee could not have been discovered by Mr. Liston at the time of his examination of the bulldozers and did not in fact arise until some time after that examination. The trial court did not err in refusing to set aside the jury verdict on this ground.
We also find appellant's contention that appellee waived the implied warranties by refusing to inspect the service records of the machines without merit. The Code clearly refers only to the buyer's refusal to inspect the goods themselves. There is no indication in § 46-2-316(3)(b) that the refusal to examine records maintained with respect to the goods operates as a waiver of the implied warranty of merchantability, nor does appellant present any authority to support that view. We must conclude that Mr. Liston's failure to inspect the records does not constitute a waiver of the implied warranties flowing from the sale of the four bulldozers.
Appellant also cites as error the giving of Plaintiff's Instruction No. 1 over *891 objection.[2] Appellant claims that this instruction orders the jury to find the existence of implied warranties in the case. This contention is without merit. The instruction correctly states the law with respect to the implied warranty of merchantability and leaves to the jury the determination of whether such warranties arose from the sale of any or all of the equipment. We find no error in the giving of Plaintiff's Instruction No. 1.[3]

II
Appellant also contends that the trial court erred in refusing to set aside the verdict because appellee's theory that express warranties arose from Mr. Young's oral representations that appellant would pay for any repairs found to be necessary after the equipment had been used for an eight-hour shift was precluded by contractual and statutory provisions.
Appellant relies on provisions in the security agreement excluding oral representations and on W.Va. Code § 46-2-202 which provides that:
Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement. . . .
Appellant contends that these provisions precluded appellee from recovering on a theory of express warranty as a matter of law and that it was therefore error for the trial court to submit the issue to the jury. We disagree.
The sale of the bulldozers was reduced to writing in a security agreement, dated October 25, 1974. That instrument contains the following statement just above the signature of appellee's representative: "No oral agreement, guaranty, promise, representation or warranty shall be binding." Mr. Liston, as appellee's representative, signed the agreement.
The uncontroverted testimony at trial was that Mr. Liston agreed to purchase the bulldozers upon the oral promise of Mr. Young that appellant would pay for all necessary repairs. Mr. Liston testified that when the defective equipment was delivered, he immediately telephoned Mr. Young to inform him of the defects and told him that appellee would not accept the equipment *892 in its damaged condition. Mr. Liston testified without contradiction that Mr. Young again assured him that appellant would pay for all necessary repairs. Appellee agreed to accept the machines in reliance on this assertion and kept a complete record of repairs to submit to appellant for reimbursement, in accordance with Mr. Young's instructions. Mr. Liston testified that he repeatedly contacted Mr. Young by telephone over the next months to inquire about payment and was assured each time that appellant would pay all charges.
First we do not think the statutory provision cited by appellant precluded appellee's recovery under the theory of breach of express warranty. The Code section clearly restricts evidence of oral terms only in the case of agreements made contemporaneously with the transaction embodied in the written instrument. The evidence here shows that Mr. Young repeatedly made oral representations that appellant would pay for needed repairs to the bulldozers after the original contract negotiations had ended. Moreover, the oral warranties to pay for repairs were made in an attempt to induce appellee to accept delivery of the machines after Mr. Liston had indicated that appellee would not accept them in their defective state. It was in reliance on those oral promises that appellee agreed to accept the goods. In effect, the parties here agreed to a subsequent oral modification of the contract as contained in the written security agreement. Where a seller promises to pay for repairs to goods delivered to the buyer in a defective condition and the buyer accepts the defective goods in reliance upon the promise to repair, such promises of the seller constitute express warranties. See, Jones v. Abriani, Ind., 350 N.E.2d 635 (1976). Even if it can be said that the original oral warranty is excluded as a matter of law, it is clear that the subsequent assertions of appellant's representative gave rise to new express warranties upon which appellee was entitled to recover. The trial court did not err submitting the question of the existence of express warranties to the jury.

III
With respect to the trial court's refusal to render judgment for appellant as a matter of law on the issue of the warranties flowing from the sale of the end loader, we reach a different conclusion. The record shows, and it is stated in appellee's original complaint, that appellee purchased from appellant a 1972 Caterpillar 988 end loader, serial number 87A5071. All evidence of damages, however, refers to a different machine, Caterpillar 988 end loader, serial number 87A6210. Mr. Liston testified that the 988 end loader his company purchased from appellant was delivered "in perfect condition." The record gives no indication that the "phantom" end loader upon which appellee claimed damages was any part of the contractual agreement between the parties which is the basis of this action. Indeed, the only evidence offered with regard to the machine which was sold pursuant to the contract here was that it arrived without defects. Where a party is not entitled to recover under any view of the evidence, a verdict should be directed for the adverse party. Syl. pt. 1, Cox v. Galigher Motor Sales Co., W.Va., 213 S.E.2d 475 (1975). The evidence here was clearly insufficient to support a verdict for appellee with respect to the end loader and the trial court erred in submitting the issue to the jury.
We think, however, that the failure of the trial court to set aside the jury verdict on this ground is not reversible error. The evidence showing appellant's breach of the express and implied warranties with respect to the sale of the four bulldozers was sufficient to support the verdict rendered by the jury in this case. Moreover, there has been no showing that the submission of the question to the jury in any way prejudiced appellant's case. Scanty evidence was offered with respect to the condition of the end loader which is the subject of this action, and that evidence was favorable to appellant. Since the jury reached the correct result and in the absence of a showing of prejudice to appellant *893 by the submission of the issue to the jury, we conclude that the trial court's failure to enter judgment for appellant with respect to the end loader was harmless. See Burns v. Goff, W.Va., 262 S.E.2d 772 (1980); Whittaker v. Pauley, 154 W.Va. 1, 173 S.E.2d 76 (1970); State Road Commission v. Bowling, 152 W.Va. 688, 166 S.E.2d 119 (1969); Roberts v. United Fuel Gas Co., 84 W.Va. 368, 99 S.E. 549 (1919); Miller v. White, 46 W.Va. 67, 33 S.E. 332 (1899).

IV
Appellant's final assignment of error is the giving of Plaintiff's Instruction No. 4,[4] which informed the jury that it could consider money spent by appellee for parts and labor used in repairing the equipment and the loss of use of the equipment by appellee for the time it was being repaired as factors in assessing the amount of damages. Appellant asserts that this charge, which was the only instruction given to the jury on the issue of damages, does not correctly instruct the jury as to the measure of damages, and that it was error for the trial court to give the instruction.
The Uniform Commercial Code provides that the usual measure of damages in an action for breach of warranty is the difference, at the time and place of acceptance, between the value of the goods accepted and the value they would have had if they had been as warranted. W.Va. Code § 46-2-714(2). However, this method of measuring damages is not intended to be the exclusive measure of damages, and where "special circumstances" show proximate damages of a different amount, the usual measure of damages for breach of warranty need not be used. W.Va. Code § 46-2-714(2), Official Comment 3. The buyer may also recover incidental and consequential damages proximately resulting from the breach. W.Va. Code §§ 46-2-714(3), 715.
We think the facts of this case present special circumstances justifying a measure of damages other than that ordinarily used in a breach of warranty action. Appellee's uncontroverted evidence shows that these transactions took place during a "coal boom," at which time it was difficult, nay, virtually impossible, to purchase construction and mining equipment of this sort, either new or used. Because of the great demand for machinery of this nature, prices charged for used equipment were inflated. The purchase price paid by appellee for the equipment here was in some cases over twice the estimated price of comparable new equipment, which was impossible to buy. Even discounting finance charges, appellee estimated that on the whole it paid thirty five percent more for this machinery than the usual price paid for new equipment. In view of the economic situation of the industry at this time it would have been very difficult to ascertain the actual value of the equipment either at the time it was sold or at the time it was accepted by appellee.
The remedies provided by the Uniform Commercial Code are to be liberally construed and administered so as to put the aggrieved party in as good a position as it would have been had the other party fully performed its agreement. W.Va. Code § 46-1-106. In light of this provision we conclude that where it is extremely doubtful that a definite figure can be ascertained representing the actual value of the goods which are the subject of a breach of warranty *894 action, either at the time of the transaction or at the time of delivery, special circumstances exist justifying the use of some other measure of damages than that ordinarily used under W.Va. Code § 46-2-714(2). The method of assessing damages provided by the trial court was reasonable under the circumstances of this case. See, Lewis v. Mobile Oil Corp., 438 F.2d 500 (8th Cir. 1971); Downs v. Shouse, 18 Ariz.App. 225, 501 P.2d 401 (1972); Rose v. Helm, 501 P.2d 753 (Colo.App.1972); Acme Pump Co., Inc. v. National Cash Register Co., 32 Conn. Sup. 69, 337 A.2d 672 (1974); DeWeber v. Bob Rice Ford, Inc., 99 Idaho 847, 590 P.2d 103 (1979); General Supply & Equipment Co., Inc. v. Phillips, 490 S.W.2d 913 (Tex. Civ.App.1973).
For the reasons stated above, we conclude that the trial court did not err in refusing to set aside the jury verdict and we affirm the ruling of the Circuit Court of Kanawha County.
Affirmed.
NOTES
[1] W.Va. Code § 46-2-314.
[2] The Court instructs the jury that under the law of the State of West Virginia a warranty that goods sold are merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

By merchantable, the Court means that such goods are fit for the ordinary purposes for which such goods are ordinarily used.
The Court further instructs the jury that in this case Mountain State Mack, the defendant, is a merchant of heavy equipment as that term is contemplated within the law as it pertains to this case.
You are therefore instructed that if you believe by a preponderance of the evidence that Mountain State Mack agreed to sell, and plaintiff, Mountaineer Contractors, agreed to buy certain heavy equipment being 4 D-9 Caterpillar bulldozers and a Caterpillar 988 End Loader for a valuable consideration, and that an implied warranty of merchantability thereon arose; and if you further believe that contrary to such an implied warranty the equipment sold was not fit for the ordinary purposes for which such heavy equipment is used and that as a proximate result thereof, the plaintiff, Mountaineer Contractors, sustained damages in the nature of parts, labor, and loss of use of such equipment, then you may find your verdict in favor of the plaintiff, Mountaineer Contractors, and assess its damages as you are hereinafter instructed.
[3] We note that appellant's real challenge to the giving of Plaintiff's Instruction No. 1 appears to be that the instruction does not inform the jury of appellant's defenses. We question that a party in a civil action can challenge, on appeal, a permissive instruction offered by opposing counsel, which correctly states a general rule of law, merely because that instruction does not include the moving party's theory of defense. If appellant had wished the jury to be instructed upon the statutory defenses, it had an obligation to request the giving of such instruction. See Whitehurst v. U. S., 272 F.2d 46 (4th Cir. 1921); Whitmer v. Marcum, 214 Va. 64, 196 S.E.2d 907 (1973); Commonwealth v. Mason, 177 Va. 684, 15 S.E.2d 114 (1941). This is not the case with respect to binding instructions. Addair v. Motor Ins. Co., W.Va., 207 S.E.2d 163 (1974).
[4] The Court instructs the jury that should you find for the plaintiff, Mountaineer Contractors, then in assessing the amount of your verdict, you may consider such items of damage as are the proximate result of the breach of warranty in this case.

In this respect you may consider such of the following items of damages as you believe by a preponderance of the evidence to have been proved and to proximately result from the breach.
1. Any money expended for the purchase of parts to repair the equipment;
2. Any money expended to pay for labor used in making the repairs;
3. Any loss sustained by reason of the loss of use of the equipment purchased from the date of purchase until its repair, providing plaintiff acted with reasonable diligence in making repairs.