342 S.E.2d 219

**James A. DELP**

v.

**ITMANN COAL COMPANY.**

No. 16541.

Supreme Court of Appeals of West Virginia.

April 2, 1986.

Burton & Goad, David Burton and Stephen B. Goad, Princeton, for appellant.

Jackson, Kelly, Holt & O'Farrell, W. Warren Upton and Gary W. Hart, Charleston, for appellee.

PER CURIAM:

This is an appeal from a final order of the Circuit Court of Wyoming County, entered March 26, 1984, which denied the motion of the appellant, James A. Delp, for a new trial. The cause of action arose under the deliberate intent provisions of the Workmen's Compensation Act, W.Va. Code § 23–4–2 [1969],[1] which we discussed at some length in *Mandolidis v. Elkins Industries, Inc.*, 161 W.Va. 695, 246 S.E.2d 907 (1978). The appellant contends that the trial court erred in directing a verdict in favor of the appellee, Itmann Coal Company. A majority of this Court finds no error

---

1. W.Va.Code § 23–4–2 [1969] provides, in pertinent part:

   If injury or death result to any employee from the deliberate intention of his employer to produce such injury or death, the employee, the widow, the widower, child or dependent of the employee shall have the privilege to take under this chapter, and shall also have cause of action against the employer, as if this chapter had not been enacted, for any excess of damages over the amount received or receivable under this chapter.

   Since this statute was in effect at the time of the appellant's injury, it, and not the 1983 amendments thereto, is controlling in this case. *See Lancaster v. State Compensation Comm'r*, 125 W.Va. 190, 23 S.E.2d 601 (1942).

in the judgment of the circuit court, and we affirm.

The appellant was an underground coal miner employed by the appellee as a miner's helper at the Itmann No. 2 mine in Wyoming County. The appellant's job called for him to work alongside a Jeffrey 120–L continuous mining machine, adjusting the power cable so that the machine would not run over it. On May 8, 1979, the appellant was performing this duty alongside a continuous miner being operated by a fellow employee named Collins when the ripper head of the machine suddenly swerved to the side, pinning the appellant against a rib of coal. As a result, the appellant suffered a broken leg, injuries to his back and chest and was unable to return to work for almost three years.

The appellant sued the appellee [2] in the Circuit Court of Wyoming County, seeking to recover damages for his injuries. The complaint alleged that the appellant's injuries were the direct and proximate result of the appellee's willful, wanton and reckless misconduct in making defective repairs to the continuous mining machine.[3] The appellee responded, denying all material allegations contained in the complaint. The appellee also moved for summary judgment, which motion was denied by order entered February 27, 1984.

Trial was conducted before a jury on February 27 and 28, 1984. At the close of all the evidence, the appellee moved for a directed verdict on the issue of liability. The trial court concluded that there was insufficient evidence to warrant submitting the issue to the jury and entered judgment in favor of the appellee. The appellant's motion for a new trial was denied by order entered March 26, 1984, and the appellant appealed.

The appellant's principal contention on appeal is that the trial court erred in entering a directed verdict in favor of the appellee.

"Upon a motion to direct a verdict for the defendant, every reasonable and legitimate inference fairly arising from the testimony, when considered in its entirety, must be indulged in favorably to plaintiff; and the court must assume as true those facts which the jury may properly find under the evidence." Syllabus, *Nichols v. Raleigh-Wyoming Coal Co.*, 112 W.Va. 85, 163 S.E. 767 (1932).

Syllabus point 1, *Jenkins v. Chatterton*, 143 W.Va. 250, 100 S.E.2d 808 (1957). Where the evidence, viewed in this light, is insufficient to support a verdict in favor of the plaintiff, the trial court is required, upon motion, to direct a verdict in favor of the defendant. *Mountaineer Contractors, Inc. v. Mountain State Mack, Inc.*, 165 W.Va. 292, 268 S.E.2d 886 (1980); *Hinkle v. Martin*, 163 W.Va. 482, 256 S.E.2d 768

---

2. The appellant initially brought suit against both the appellee and Consolidation Coal Company. The complaint was subsequently dismissed as to Consolidation, however.

3. The allegation stated in the complaint was as follows:

That on May 8, 1979, the aforementioned continuous miner was unsafe and hazardous for use to such an extent that the natural and probable consequence reasonably to be anticipated from its operation would be to cause serious injuries to the plaintiff. That as a part of the control mechanism of said continuous miner, for the operator to move said continuous miner, it is designed with certain control levers which allow the machine to be trammed about in the mine. That on the date in question in this accident, and for some time immediately prior thereto, the control levers had been improperly bolted, thus preventing the operator of said miner from operating same in a safe manner. The proper levers or shear pins which control the said continuous miner had been removed and improper bolts were substituted. That said defective repair was performed and done at the direction of the defendant corporations through their agents, employees and assigns, and was known by the defendant corporations through their agents, employees and assigns to be defective and improper. Said improper removal of the proper working parts of this continuous miner were in direct violation of Title 30 of the Code of Federal Regulations, all of which action by the defendant corporations, through their agents, employees and assigns, will prove a willful, wanton and reckless misconduct on the part of the defendant corporations, as well as the deliberate intention on the part of the defendant corporations to cause serious bodily injuries to the plaintiff.

(1979); *Cox v. Galigher Motor Sales Co.,* 158 W.Va. 685, 213 S.E.2d 475 (1975).

Viewing the evidence adduced at trial in the light most favorable to the appellant, the jury could have made the following findings of fact: The appellant was injured when the continuous miner's tram levers, the hydraulic controls which regulate the backward and forward motion of the machine, locked, causing the ripper head to swerve suddenly and strike the appellant. At the time of the accident, one of the tram levers was secured to the body of the continuous miner with a nut and bolt, instead of the cotter pin used by the manufacturer. Although a bolt was sometimes used to replace a broken cotter pin on tram levers, it was not an approved replacement part and its use therefore violated company policy, presumably arising out of safety regulations.

The appellant noticed the bolt on the tram lever four or five days before the accident. He also noticed that the bolt did not fit snugly, causing the continuous miner to vibrate and wobble, although the machine vibrated to some extent in the course of normal operation. The appellant reported the substitution to Collins, the operator of the continuous miner, and Kermit Tolliver, the chief electrician, but was told by Collins that the bolt wouldn't cause any problems and no one would be in danger. On the day before the accident, the appellant also mentioned the bolt to Dwight Trent, the section mechanic, who told him that there were no cotter pins available, but that he would mention the matter to Tolliver.

Although some continuous miner operators had had problems with sticking tram levers prior to the accident, none was aware of any incident in which the levers locked because a bolt was used instead of a cotter pin. The company had no report of any such prior incident on a Jeffrey 120–L continuous miner, with or without a bolt in place. Neither Collins nor the employees who operated the miner on the shifts immediately before and after the shift at which the appellant was injured had ever had any problems with the levers sticking or locking. Collins was able to move the levers without difficulty immediately after the accident in order to free the appellant. The section foreman, Dallas Acord, and Tolliver both tested the machine shortly afterwards with the bolt in place and found no problem with the tram levers and no impairment of the space between the two levers as a result of the use of the bolt. MSHA inspected the miner after the accident and issued no citations.

Even viewing the evidence in this light, we fail to see any set of facts upon which the jury could render a verdict in favor of the appellant. W.Va.Code § 23–4–2 preserves a common law right of action against an employer for personal injuries in the work place only when the employee's injury results from the deliberate intention of the employer to produce it. In *Mandolidis v. Elkins Industries, Inc., supra,* we held that "deliberate intent" embraced 'wilful, wanton, and reckless misconduct," as well as intentional tort. In the Syllabus of *Kane v. Corning Glass Works,* 175 W.Va. 77, 331 S.E.2d 807 (1984), we restated the burden the plaintiff bears in a *Mandolidis* action:

"Under *Mandolidis v. Elkins Industries, Inc.,* [161 W.Va. 695,] 246 S.E.2d 907 [96 A.L.R.3d 1035] (1978), it is essential, in order for an injured employee to recover, that the employer's misconduct must be of an intentional or wilful, wanton and reckless character, that the employer must have knowledge and appreciation of the high degree of risk of physical harm to another created by such misconduct, and, of course, that the employer's action must be the proximate cause of the injury." Syllabus, *Cline v. Joy Mfg. Co.,* 172 W.Va. 769, 310 S.E.2d 835 (1983).

Evidence of "wilful, wanton and reckless misconduct" which would warrant a finding of "deliberate intent" must be "clear and forceful in high degree." *Cline v. Joy Mfg. Co.,* 172 W.Va. at 772, 310 S.E.2d at 838, *quoting Maynard v. Island Creek Coal Co.,* 115 W.Va. 249, 253, 175 S.E. 70, 72 (1934).

The appellant's evidence fails to meet this standard. There is no evidence here, as there was in *Mandolidis,* that the

appellee's use of a bolt to secure the tram levers violated federal or state safety regulations or resulted in a citation from any safety agency. Nor was there any evidence that the improper substitution of the bolt for the cotter pin caused the locking of the tram levers. Even if the causal connection could be inferred from the evidence, there is nothing to indicate that the appellee knew that the substitution of the bolt for the cotter pin presented a danger to persons working around the continuous miner, since there had never been any injury in the past as a result. In short, while the evidence shows that the appellee may have been negligent in allowing substitution of an improper part in repairing the machine, such a showing is not sufficient to prove the deliberate intent to injure required under *Mandolidis* and *Cline*. In view of our resolution of this issue we need not address the appellant's assignment of error relating to the evidence of damages.

The appellant also contends that the trial court erred in not allowing him to call Tolliver as an adverse witness pursuant to Rule 43(b) of the West Virginia Rules of Civil Procedure. However, the appellant does not specify the manner in which he was prejudiced by the trial court's ruling. Our review of the record does not reveal that the trial court unduly restricted plaintiff counsel's questioning of Tolliver on direct examination. Accordingly, we conclude that any error on the part of the trial court was harmless.

For the reasons stated herein, a majority of this Court is of the opinion that the trial court properly granted the appellee's motion for a directed verdict. Accordingly, the judgment of the Circuit Court of Wyoming County is affirmed.

Affirmed.

McGRAW, Justice, dissenting:

I dissent from the majority because the right of trial by jury is a fundamental principle of Americo-Virginia law.

Chesterton, the "prince of paradox," framing the experience of two millennia in *Tremendous Trifles: The Twelve Men,* said:

"Our civilisation has decided, and very justly decided, that determining the guilt or innocence of men [natural or artificial] is a thing too important to be trusted to trained men. It wishes for light upon that awful matter, it asks men who know no more law than I know, but who can feel the things that I felt in the jury box. When it wants a library catalogued, or the solar system discovered, or any trifle of that kind, it uses up its specialists. But when it wishes anything done which is really serious, it collects twelve of the ordinary men standing round. The same thing was done, if I remember right, by the Founder of Christianity." Gilbert K. Chesterton, *Tremendous Trifles: The Twelve Men* 86–87 (1922).

Sprung from this political experience, our West Virginia Constitution, living today, asserts in Article III, § 10:

"No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers."

West Virginia Constitution, Article III, § 17 affirms "due process of law":

"The courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay."

West Virginia Constitution, Article III, § 13 provides thusly for "judgment of his peers":

"In suits at common law, where the value in controversy exceeds twenty dollars exclusive of interest and costs, *the right of trial by jury, if required by either party, shall be preserved;* ... No fact tried by a jury shall be otherwise reexamined in any case than according to rule of court or law." (Emphasis added).

Padover, in *The Complete Jefferson* attributes to the great Thomas:

"In truth, it is better to toss up [heads or tails] ... in a cause than to refer it to a judge whose mind is warped by any motive whatever, in that particular case. But the common sense of twelve honest men gives still a better chance of just

decision than the hazard of [heads or tails]...." Saul K. Padover, *The Complete Jefferson* 656 (1943).

That Mr. Delp's physical injuries impinges upon full enjoyment of life, liberty and property is clearly apparent to the most jaded of our professional lot. But, the claim that his injury is the result of willful, wanton and reckless misconduct will never be put to the judgment of his peers. The Court has been closed. There shall be no remedy by due course of law. Justice is denied because the right to a jury trial has not been preserved.

The trial court erred in substituting a personal view of the evidence for the fact-finding function of the jury. This is precisely the evil that West Virginia Constitution, Article III, § 13 is designed to prevent.

The majority has also forsaken West Virginia Constitution, Article IV, § 5 in its refusal to apply the constitutional standard of review mandated by West Virginia Constitution, Article III, § 20:

> "Free government and the blessings of liberty can be preserved to any people only by a firm adherence to justice, moderation, temperance, frugality and virtue, and by a frequent recurrence to fundamental principles."

The right of trial by jury is a fundamental principle of Americo-Virginia law. Accordingly, the judgment of the circuit court should be reversed and the case should be put to a jury trial.