# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

### September Term 2014

**FILED**

**October 30, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

————————

No. 13-1247

————————

### APPALACHIAN LEASING, INC.,
a West Virginia corporation,
Plaintiff Below, Petitioner

v.

### MACK TRUCKS, INC.,
a foreign corporation; and
### WORLDWIDE EQUIPMENT, INC.,
a foreign corporation,
Defendants Below, Respondents

———————————————————————————————

Appeal from the Circuit Court of Mercer County
The Honorable William J. Sadler, Judge
Civil Action No. 08-C-527

### REVERSED AND REMANDED

———————————————————————————————

Submitted: October 1, 2014
Filed: Oct. 30, 2014

Stephen P. New, Esq.                     Harry F. Bell, Jr., Esq.
The New Law Office                       Jonathan W. Price, Esq.
Beckley, West Virginia                   The Bell Law Firm, PLLC
Counsel for the Petitioner               Charleston, West Virginia
                                         Counsel for the Respondents

**JUSTICE KETCHUM delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1. Under *W.Va. Code*, 46-2-719(2) [1963], of the *West Virginia Uniform Commercial Code*, where an express warranty limits the buyer's remedies to repair or replacement of parts found to be defective, the refusal or inability of the seller to remedy the defect is a failure of the essential purpose of the express warranty, and the buyer may pursue remedies and damages as provided in Article 2 of the *West Virginia Uniform Commercial Code*.

2. Under *W.Va. Code*, 46-2-719(3) [1963], of the *West Virginia Uniform Commercial Code*, where an express warranty fails of its essential purpose thereby allowing the buyer to pursue remedies and damages under Article 2 of the *West Virginia Uniform Commercial Code*, the seller's exclusion of consequential damages from the express warranty remains in effect, unless the exclusion is unconscionable.

**Justice Ketchum**:

This matter arose from a business transaction subject to the *West Virginia Uniform Commercial Code*. The plaintiff, Appalachian Leasing, Inc., ("Appalachian") purchased four coal trucks from the defendants, Mack Trucks, Inc., ("Mack") and Worldwide Equipment, Inc., ("Worldwide"). Alleging that the trucks were defective, Appalachian filed an action in the Circuit Court of Mercer County, seeking a revocation of acceptance of the vehicles, a refund of the purchase price, and incidental and consequential damages.

On November 12, 2013, the circuit court entered an order granting summary judgment in favor of Mack and Worldwide and dismissing the action with prejudice. The circuit court determined that Mack and Worldwide had satisfied their obligations under the trucks' express warranty and that all implied warranties had been disclaimed.

Upon review, this Court reverses the summary judgment. Although the implied warranties were validly disclaimed, the appendix record reveals genuine issues of material fact concerning whether Mack and Worldwide satisfied their obligations under the trucks' express warranty. Appalachian is entitled, on remand, to pursue the various remedies and damages provided in Article 2 on "Sales" of the Uniform Commercial Code.

1

Accordingly, the November 12, 2013, order of the circuit court is reversed, and this action is remanded to that court for proceedings consistent with this opinion.

## I. Factual Background

Appalachian is a coal hauling company in southern West Virginia with approximately seventy-five employees and in excess of one hundred trucks. Its principal officers were Kenny Compton and his wife, Lynn Compton. In December 2007 and January 2008, Appalachian purchased four, new 2008 Mack trucks, Model GU-713, for off-road coal hauling purposes. The trucks were sold to Appalachian by Worldwide, a franchised retail dealer for Mack.[1] Appalachian purchased three of the trucks for $165,000 each and the fourth for $175,000. The sale agreements for the trucks were signed on Appalachian's behalf by Kenny Compton.

## A. Warranties and Disclaimers

---

[1] Mack is the manufacturer of commercial vehicles, including vehicles used in the coal mining industry in southern West Virginia. In this action, Mack delivered the four trucks as incomplete units, and Worldwide outfitted them with load-carrying bodies for off-road work, as specified by Appalachian.

Defendants Mack and Worldwide argue in their joint brief that Article 2 of the *West Virginia Uniform Commercial Code* is the controlling law in this action. Mack does not contend that it is not a seller as defined in Article 2 of the *Uniform Commercial Code* or that Article 2 does not apply to it in this action. The plaintiff, Appalachian, also agrees that the *Uniform Commercial Code* applies to both defendants.

The only express warranty made with regard to Appalachian's purchase of the four trucks was included in Mack's "Pedigreed Protection Plan." That warranty, known as Mack's "Standard Warranty," along with various disclaimers, stated:

> Mack Trucks, Inc. (the "Manufacturer") warrants each new Mack motor vehicle (the "Vehicle") sold by it or by any of its authorized new truck sales facilities to be free from defects in material or workmanship under normal use and service, its obligation under this warranty being limited to repairing or replacing, as hereinafter provided, at its option, at the Manufacturer's authorized truck repair facility any part or parts of the Vehicle found to the Manufacturer's satisfaction to be defective upon examination by it[.] * * *
>
> THIS WARRANTY IS MADE EXPRESSLY IN LIEU OF ANY OTHER WARRANTIES OR CONDITIONS, EXPRESSED OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OR CONDITION OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND OF ANY OTHER OBLIGATION OR LIABILITY ON THE PART OF THE MANUFACTURER INCLUDING, WITHOUT LIMITATION OF THE FOREGOING, CONSEQUENTIAL AND INCIDENTAL DAMAGES.

Worldwide's sales agreement with Appalachian incorporated by reference Mack's Standard Warranty. The sales agreement, entitled the "Truck-Equipment Sales Agreement," included the following disclaimer (with emphasis added):

> DISCLAIMER OF WARRANTIES: SELLER MAKES NO WARRANTIES AS TO THE PROPERTY, EXPRESS, IMPLIED OR IMPLIED BY LAW EXCEPT, AS TO NEW VEHICLES ONLY, <u>THE MANUFACTURER'S [Mack's] STANDARD VEHICLE WARRANTY, WHICH IS INCORPORATED HEREIN BY REFERENCE.</u> SELLER SPECIFICALLY DISCLAIMS ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE

AND ANY LIABILITY FOR CONSEQUENTIAL DAMAGES FOR ANY BREACH OF WARRANTY.

Finally, a similar disclaimer appeared on Worldwide's invoices for the four trucks:

Any warranties applicable to a new motor vehicle ordered hereunder are the Manufacturer's [Mack's] warranties only and not the Dealer's. DEALER HEREBY EXPRESSLY DISCLAIMS ALL WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. BUYER SHALL NOT BE ENTITLED TO RECOVER FROM THE SELLER ANY CONSEQUENTIAL DAMAGES, DAMAGES TO PROPERTY, DAMAGES FOR LOSS OF USE, LOSS OF TIME, LOSS OF PROFITS OR INCOME OR ANY INCIDENTAL DAMAGES.

## B. Allegations that the Trucks were Defective

According to Appalachian, each of the four trucks failed to properly function due to a multitude of problems beginning immediately after the purchase from Worldwide. The trucks continually broke down, resulting in repeated instances of driving or towing the trucks back to Worldwide for repairs. As described by Kenny and Lynn Compton, the problems included (1) would not run, (2) hard to start, (3) transmission problems, (4) overheating, (5) leaking water pump, (6) hoods falling off and (7) cabs falling apart. Moreover, although Mack and Worldwide never declined to try to repair the trucks, the repairs allegedly were never successful and replacement vehicles were never provided.

## II. Procedural Background

On September 16, 2008, Appalachian filed a complaint in the Circuit Court of Mercer County against Mack Trucks and Worldwide. The complaint was grounded on Article 2 on "Sales" of the *West Virginia Uniform Commercial Code*, *W.Va. Code*, 46-1-101 [2006], *et seq*. Appalachian alleged that Mack and Worldwide breached both express and implied warranties relating to the four trucks. With regard to the express warranty, Appalachian alleged that, despite repeated attempts, the trucks were never repaired as initially promised, and Appalachian never received comparable replacement vehicles. With regard to the implied warranties of merchantability and of fitness for a particular purpose, the complaint alleged:

> The implied warranty made by defendants that their off-road coal trucks were of good and merchantable quality and fit and suitable for its intended use was breached upon the failure of defendants to design and install component parts of fully and reliably built design and manufacture, so as to permit their proper use in the off-road trucking industry.[2]

---

[2] Under *W.Va. Code*, 46-2-313(1)(a) [1963], of the *Uniform Commercial Code*, an express warranty is created when the seller's "affirmation of fact or promise" concerning the goods sold becomes part of the basis of the bargain. With regard to the implied warranty of merchantability, *W.Va. Code*, 46-2-314(2)(c) [1963], provides that, to be merchantable, goods must be, at least, "fit for the ordinary purposes for which such goods are used." Finally, *W.Va. Code*, 46-2-315 [1963], provides that an implied warranty of fitness for a particular purpose is created where the seller "at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods[.]"

For a discussion of the differences between the warranty of merchantability and the warranty of fitness for a particular purpose, *see* Vol. 3, R. W. Duesenberg, *Sales &*

For relief, Appalachian sought a revocation of acceptance of the four trucks, a refund of the purchase price, and incidental and consequential damages. Included in the demand for damages, Appalachian sought lost business income, expenses for towing and replacement transportation, and compensation for annoyance and inconvenience.

On September 5, 2013, Mack and Worldwide filed a motion for summary judgment. Mack and Worldwide alleged that, since they never refused to attempt repairs on the four trucks, Appalachian would be unable to show a breach of the Standard Warranty found in Mack's Pedigreed Protection Plan. That express warranty was limited to repairing and replacing defective parts. Moreover, Mack and Worldwide alleged that Appalachian would be unable to show a breach of the implied warranties of merchantability and fitness because Appalachian waived those claims at the time of purchase, as evidenced by Worldwide's Truck-Equipment Sales Agreements and invoices.

On November 12, 2013, the circuit court granted summary judgment in favor of Mack and Worldwide and dismissed the action with prejudice. The order addressed (1) Mack and Worldwide's (incorporated) express warranty, (2) Mack's and Worldwide's disclaimers of implied warranties and (3) Mack's and Worldwide's limitation of Appalachian's remedies.

_____

*Bulk Transfers Under the Uniform Commercial Code*, § 7.02[3] (Matthew Bender 2014).

With regard to the express warranty, the circuit court concluded:

> The defendants' obligation pursuant to Mack's express warranty was limited to repair or replacement of any vehicle components that Defendant Mack found to be defective. * * * Kenny Compton gave sworn testimony that the Defendants had never failed to perform warranty service upon the subject vehicles. Accordingly, Appalachian's claim for breach of express warranty is without merit.

Next, the circuit court recognized that *W.Va. Code*, 46-2-316(2) [1963], allows the parties to a commercial sale to exclude or modify the implied warranties of merchantability and of fitness for a particular purpose, if the language used in the transaction specifically mentions those warranties and is conspicuously set forth in the sale documents. The circuit court concluded that the disclaimers of the implied warranties found in Mack's Pedigreed Protection Plan and in Worldwide's Truck-Equipment Sales Agreements and invoices met the requirements of *W.Va. Code*, 46-2-316(2) [1963], and that, consequently, Appalachian could not prevail on a theory of implied warranties.

Finally, the circuit court recognized that *W.Va. Code*, 46-2-316(4) [1963], provides that "[r]emedies for breach of warranty can be limited" by the parties. Accordingly, the circuit court noted that Mack was only obligated to repair the trucks and replace defective parts and that under the terms of its Pedigreed Protection Plan and Worldwide's sale agreement and invoices, all claims for incidental and consequential damages were precluded. Finding that Kenny Compton, who signed the sale documents, had sufficient experience in

7

the coal industry to understand their import, the circuit court rejected Appalachian's assertion that the limitation of remedies was unconscionable.

The ruling of the circuit court precluded Appalachian from seeking a revocation of acceptance and a refund of the purchase price, as well as incidental and consequential damages. This appeal followed.

**III. Standards of Review**

Pursuant to Rule 56 of the *West Virginia Rules of Civil Procedure*, summary judgment is proper where the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." As a result of that straightforward language, this Court's standards of review concerning summary judgment are well settled. Syllabus point 3 of *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of N. Y.*, 148 W.Va. 160, 133 S.E.2d 770 (1963), holds: "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *Accord* syl. pt. 1, *Coleman Estate v. R.M. Logging, Inc.*, 222 W.Va. 357, 664 S.E.2d 698 (2008).

Moreover, this Court has observed that, in reviewing an order granting a motion for summary judgment, any permissible inferences from the underlying facts must be drawn in

8

the light most favorable to the party opposing the motion. *See Mueller v. Am. Elec. Power Energy Serv.*, 214 W.Va. 390, 393, 589 S.E.2d 532, 535 (2003). Finally, in syllabus point 1 of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), this Court stated that a circuit court's entry of summary judgment "is reviewed *de novo*." *Accord Grant Thornton, LLP v. Kutak Rock, LLP*, 228 W.Va. 226, 233, 719 S.E.2d 394, 401 (2011).

**IV. Discussion**

**A. Mack and Worldwide's Express Warranty**

Under *W.Va. Code*, 46-2-313(1)(a) [1963], of the *Uniform Commercial Code*, a seller's express warranty is created by any "affirmation of fact or promise" relating to the goods, which "becomes part of the basis of the bargain." Tracking that language, syllabus point 7 of *Reed v. Sears, Roebuck & Co.*, 188 W.Va. 747, 426 S.E.2d 539 (1992), states:

> West Virginia Code § 46-2-313(1)(a) and (b) (1966) mandates that an express warranty is created only when the affirmation of fact, promise or description of the goods is part of the basis of the bargain made by the seller to the buyer about the goods being sold.

Here, the Standard Warranty found in Mack's Pedigreed Protection Plan promised that each new Mack vehicle would be "free from defects in material or workmanship under normal use and service" and that Mack's obligation in that regard would be limited to repairing or replacing defective parts. Worldwide incorporated Mack's standard express

9

warranty in its sales agreement with Appalachian.

The circuit court found that Mack and Worldwide "never failed to perform warranty service upon the subject vehicles" and that, consequently, summary judgment was appropriate. Appalachian contends, however, that questions of fact were never resolved concerning whether the express warranty was breached. According to Appalachian, each of the four trucks failed to function due to a multitude of defects that became apparent immediately after the purchase. Appalachian further asserts that the four trucks were incapable of being repaired. During the hearing on the motion for summary judgment, counsel for Appalachian stated that there were "upwards of 54 attempts" to repair one particular truck.

Pursuant to *W.Va. Code*, 46-2-607(4) [1963], "[t]he burden is on the buyer to establish any breach with respect to the goods accepted." The evidence reveals related questions of fact as to whether the express warranty was breached *ab initio* on the basis that the trucks were inherently defective and unusable and whether the trucks were incapable of being repaired. Nothing in the record indicates that the four trucks actually hauled coal on Appalachian's behalf for any appreciable period of time.

During his deposition, Worldwide's corporate representative acknowledged that a

10

number of Worldwide's customers were having problems with the Mack GU-713 trucks, particularly "with the engines." The trucks purchased by Appalachian were Mack GU-713 trucks. Worldwide's representative also acknowledged that, if a problem was not fixed after repeated attempts, it could mean the presence of a manufacturing defect. Kenny Compton of Appalachian testified during his deposition as follows:

> A. There's one of them still at Worldwide now that we traded back in to them. I went over there personally myself and picked that truck up three times, and it broke down before I got to Walmart. The last time I picked it up, I had to have a wrecker bring it back in. It went in there to have a cab put on it because the cab had fell apart on it. And the company gave us a cab. They – Mack supplied a cab to go back on it. Before we could get it out of there, I think the motor blew up in it. * * * The – we couldn't keep the hoods on them. The hoods fell off of them. The cabs fell apart. * * * [W]e had transmission issues, clutch issues, rear end issues.[3]

By contrast, as the circuit court found, Mack and Worldwide rely on evidence to the effect that they never failed to attempt to make repairs, or replace defective parts, when the trucks were presented for warranty service.

The Official Comment to *W.Va. Code*, 46-2-313 [1963], on the creation of express warranties, confirms the fundamental views that "the whole purpose of the law of warranty

---

[3] In addition, Kenny Compton indicated that, on at least one occasion, one of the trucks lost power and slipped backwards on the side of a hill, threatening employee safety.

11

is to determine what it is that the seller has in essence agreed to sell" and that "the probability is small that a real price is intended to be exchanged for a pseudo-obligation." Here, Appalachian did not purchase the four trucks knowing them to be defective and hoping that the trucks would be repaired at a later time. The trucks purchased were new, 2008 Mack trucks, Model GU-713, customized for off-road coal hauling purposes.

If the trucks were inherently defective and unusable because of a manufacturing defect and incapable of being repaired, then Appalachian was deprived of the basis of its bargain. The circuit court did not address the quality and satisfactoriness of the repairs or the replacement parts. As summarized by J. S. Herbrand, Annotation, *Construction and Effect of New Motor Vehicle Warranty Limiting Manufacturer's Liability to Repair or Replacement of Defective Parts*, 2 A.L.R.4th 576, 581 (1980):

> It is generally held that where a motor vehicle warranty limits the buyer's remedies to repair or replacement of defective parts, the refusal or unsuccessful attempt by a manufacturer or seller to repair or replace defective parts constitutes a breach of warranty for which the buyer may recover any damages allowable by law.

In that regard, circumstances can exist where a limited remedy, such as an express warranty limited to repairing or replacing defective parts, may fail of its essential purpose of providing the buyer with a usable product. As *W.Va. Code*, 46-2-719(2) [1963], provides: "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose,

12

remedy may be had as provided in this article." In *Kraft v. Staten Island Boat Sales, Inc.*, 715

F. Supp.2d 464, 475 (S.D.N.Y. 2010), for example, the District Court stated:

> Under U.C.C. section 2-719, a sales contract may limit the remedies available under express warranties to repair or replacement. *See* N.Y. U.C.C. § 2-719. "The U.C.C. permits this limitation so long as the remedy does not fail of its essential purpose, such as through the inability of the warrantor to repair defects." *Demorato v. Carver Boat Corp.*, 304 Fed. Appx. 100, 102 (3d Cir. 2008) (applying New York law)[.]

Moreover, we note the following language found in *Givan v. Mack Truck, Inc.*, 569

S.W.2d 243 (Mo. Ct. App. 1978): "[T]he fact that the manufacturer in good faith attempts

to repair the defect whenever requested to do so is not a fulfillment of the warranty; he must

demonstrate that the defect is permanently remedied as promised in the express warranty."

569 S.W.2d at 247.

Accordingly, this Court holds that, uuder *W.Va. Code*, 46-2-719(2) [1963], of the *West*

*Virginia Uniform Commercial Code*, where an express warranty limits the buyer's remedies

to repair or replacement of parts found to be defective, the refusal or inability of the seller

to remedy the defect is a failure of the essential purpose of the express warranty, and the

buyer may pursue remedies and damages as provided in Article 2 of the *West Virginia*

*Uniform Commercial Code*.

In this action, genuine issues of material fact remain concerning whether Mack and

Worldwide satisfied their obligations under Mack's express warranty, or whether the trucks were so defective, unusable, and incapable of being repaired that the express warranty failed of its essential purpose of providing Appalachian with four trucks suitable for off-road coal hauling purposes. Therefore, the granting of summary judgment with regard to the express warranty was error.[4]

**B. The Disclaimer of Implied Warranties**

Mack's Pedigreed Protection Plan, as well as Worldwide's sales agreement and invoices, included disclaimers of the implied warranty of merchantability and the implied warranty of fitness for a particular purpose. The circuit court upheld the disclaimers on the basis of *W.Va. Code*, 46-2-316(2) [1963], which provides that

> to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous.

As stated in the Official Comment to *W.Va. Code*, 46-2-316 [1963], that provision

---

[4] In the following cases, summary judgment was found inappropriate on a claim that a warranty failed of its essential purpose: *Pack v. Damon Corp.*, 434 F.3d 810 (6th Cir. 2005); *Kraft, supra,* 715 F. Supp.2d at 476 ("Thus, whether the limited warranty failed in its essential purpose is a question of fact for the jury to determine based on circumstances transpiring after the contract was formed."); *Siemens Credit Corp. v. Marvik Colour, Inc.*, 859 F. Supp. 686 (S.D.N.Y. 1994).

permits the exclusion of implied warranties "only by conspicuous language or other circumstances which protect the buyer from surprise." *Accord* 67A Am. Jur. 2d *Sales* § 733 (2014). *See Mountaineer Contractors, Inc. v. Mountain State Mack, Inc.*, 165 W.Va. 292, 296, 268 S.E.2d 886, 889 (1980) ("The Uniform Commercial Code anticipates that the parties, by agreement or by deed, may limit or exclude entirely the warranty of merchantability otherwise implied in a contract for the sale of goods.").

The circuit court also upheld the disclaimers on the basis that they were not unconscionable. However, Appalachian contends that the implied warranty disclaimers were unconscionable because of the unequal bargaining position of the parties at the time of sale and because Mack and Worldwide never advised Appalachian of the disclaimers' import.[5]

---

[5] *W.Va. Code*, 46-2-302(1) [1963], provides:

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

*See* M. Roberts, Annotation, *Unconscionability, Under UCC § 2-302 or § 2-719(3), of Disclaimer of Warranties or Limitation or Exclusion of Damages in Contract Subject to UCC Article 2 (Sales)*, 38 A.L.R.4th 25 (1985) ("[S]ome courts have expressly or impliedly adopted the view that § 2-302 is applicable to disclaimers, even though they comply with the requirements for validity of § 2-316[.]").

15

The enforceability of Section 2-316 disclaimers of implied warranties is addressed in the treatise *Sales & Bulk Transfers Under the Uniform Commercial Code*:

> An effective disclaimer of implied warranties depends upon two inquiries: First, whether the requisites of a disclaimer as set forth in the Code have been complied with, and second, even where satisfied, whether other factors will frustrate its operation. * * * Thus, courts have generally held that disclaimers [of] warranty made on or after delivery of the goods by means of an invoice, receipt, or similar note are ineffectual unless the buyer assents or is charged with knowledge of the disclaimer.[6]

Here, the parties are in agreement that the purchase of the four Mack trucks by Appalachian was not a consumer transaction subject to *W.Va. Code*, 46A-6A-1 [1984], *et seq.*, entitled "Consumer Protection - New Motor Vehicle Warranties." The sale of the trucks was a commercial transaction under the *West Virginia Uniform Commercial Code*. Mack sold the trucks as incomplete units, and Worldwide outfitted them with load-carrying bodies for off-road work, as specified by Appalachian. *See* n. 1, *supra*.

Kenny Compton, Appalachian's corporate officer, was the sole individual acting on Appalachian's behalf in the purchase of the trucks, and he signed Worldwide's sale agreements. As the circuit court found, Mr. Compton, had been engaged for many years in the business of hauling coal. Moreover, Mr. Compton indicated in his deposition that he had

---

[6] Vol. 3, R. W. Duesenberg, *Sales & Bulk Transfers Under the Uniform Commercial Code*, § 7.03[1] (Matthew Bender 2014).

16

been involved on numerous occasions in the purchase of trucks from other manufacturers.

The Pedigreed Protection Plan, the sale agreements, and the invoices set out the disclaimers of the implied warranties in capital letters. Mr. Compton's signature on the sale agreements appears on the same page as the disclaimers. Mr. Compton indicated in his deposition that he never looked at the Pedigreed Protection Plan prior to purchasing the trucks, nor did he read the disclaimers set forth on the invoices.

The circuit court correctly determined that the disclaimers were conspicuous and in conformity with *W.Va. Code*, 46-2-316(2) [1963]. Given the amount paid for the trucks, Mr. Compton should have been more careful with respect to the documents surrounding the purchase. The disclaimers were not couched in a "linguistic maze." In *Reddy v. Community Health Foundation*, 171 W.Va. 368, 373, 298 S.E.2d 906, 910 (1982), this Court observed: "A person who fails to read a document to which he places his signature does so at his peril." Moreover, we find unpersuasive Appalachian's assertion that the disclaimers of the warranties are unconscionable. Appalachian's coal hauling business, with numerous employees and trucks, was substantial. This Court finds no disparity in the bargaining position of the parties rising to the level of unconscionability with regard to the disclaimers of the implied warranty of merchantability and the implied warranty of fitness for a particular purpose.

We therefore find that the circuit court did not err in granting Mack and Worldwide summary judgment with regard to the implied warranties of merchantability and fitness.

## C. Consequential Damages For
## Any Breach of the Express Warranty

Under the *West Virginia Uniform Commercial Code*, express warranties and implied warranties are addressed in separate statutes and, pursuant to *W.Va. Code*, 46-2-317 [1963], are generally considered to be "cumulative." Consequently, in this action, the valid defendants' disclaimer of the implied warranties pursuant to *W.Va. Code*, 46-2-316(2) [1963], does not preclude Appalachian's remedy for the alleged breach of Mack's express warranty found in Mack's Pedigreed Protection Plan, and incorporated by reference in Worldwide's sales agreement. On remand of this action, Appalachian can present evidence that the express warranty failed of its essential purpose of providing Appalachian with four trucks suitable for off-road coal hauling purposes. However, as explained in *Anderson on the Uniform Commercial Code*, where "a failure of the essential purpose" is established, *"this does not reinstate any warranty that had been excluded in the manner authorized by U.C.C. § 2-316."*[7]  (Emphasis added)

---

[7] *See* Vol. 4B, L. Lawrence, *Lawrence's Anderson on the Uniform Commercial Code*, § 2-719:143 (3rd ed. 2010). As further stated therein: "In an action arising out of a purchase of industrial equipment, a failure of the essential purpose of express warranties did not revive disclaimed implied warranties."

18

Pursuant to *W.Va. Code*, 46-2-719(2) [1963], "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this article." If Appalachian prevails on its claim for breach of express warranty, the remedies available would consist of those found in Article 2 on "Sales." However, *W.Va. Code*, 46-2-719(3) [1963], states that consequential damages "may be limited or excluded unless the limitation or exclusion is unconscionable."

In the documents of sale, including the express warranty, Mack and Worldwide, excluded liability for consequential damages. Thus, on remand, Appalachian must show unconscionability to recover consequential damages. Unconscionability is an equitable principle, and whether a provision is unconscionable is for the court to decide. *See* Official Comment, *W.Va. Code*, 46-2-302 [1963] (Unconscionability is for the court to decide, not the jury.). The parties must be afforded a reasonable opportunity to present evidence as to the provision's commercial setting, purpose and effect, to aid the court in making its determination. *W.Va. Code*, 46-2-302(2) [1963].

This area of the law is clarified in *Anderson on the Uniform Commercial Code* as follows:

> [t]he mere fact that a jury found a limited remedy to have failed of its essential purpose did not destroy a provision in a warranty excluding consequential damages. However, this did not mean that the exclusion of consequential

19

damages would necessarily be upheld. Rather, that provision would be judged on its own merits to determine whether its enforcement would be unconscionable.[8]

Therefore, under *W.Va. Code*, 46-2-719(3) [1963], of the *West Virginia Uniform Commercial Code*, where an express warranty fails of its essential purpose thereby allowing the buyer to pursue remedies and damages under Article 2 of the *West Virginia Uniform Commercial Code*, the seller's exclusion of consequential damages from the express warranty remains in effect, unless the exclusion is unconscionable.

## V. Conclusion

Although the implied warranties were validly disclaimed, the appendix record reveals genuine issues of material fact concerning whether Mack and Worldwide satisfied their obligations under the trucks' express warranty. As a result, Appalachian is entitled, on remand, to pursue the various remedies provided in Article 2 on "Sales" of the Uniform Commercial Code. However, Appalachian's pursuit of consequential damages is barred on the express warranty claim unless the circuit court finds the provision relating to consequential damages to be unconscionable.

The November 12, 2013, order of the Circuit Court of Mercer County is reversed, and

---

[8] *See* Vol. 4B, L. Lawrence, *Lawrence's Anderson on the Uniform Commercial Code*, § 2-719:145 (3rd ed. 2010).

this action is remanded to that court for proceedings consistent with this opinion.

**Reversed and Remanded.**